MONICA TEXTILE
CORPORATION, Plaintiff,

v.

S.S. TANA, her engines, boilers, etc., Barber West Africa Lines, Barber Steamship Lines, Inc., Barber Steamship Lines (N.A.) Inc., and Sekihyo Line (Panama) S.A., Defendants.

No. 88 CIV 5127(LBS).

United States District Court,
S.D. New York.

Feb. 21, 1990.

McDonald, Herbermann & Fenzel, New York City, for plaintiff; Peter D. Fenzel, of counsel.

Healy & Baillie, New York City, for defendants; Richard V. Singleton, II, of counsel.

## OPINION

SAND, District Judge.

One might have thought, considering the volume of litigation concerning the subject, that all issues had been resolved relating to the question whether the $500 package limitation on liability arising under bills of lading and the Carriage of Goods by Sea Act ("COGSA") applies to a single container or to the units of goods shipped in that container. As Judge Haight observed in *I.N.A. v. Texas*, 1985 AMC 1358, 1361 (84 Civ. 1700 (CSH)), 1984 WL 1300 (not otherwise reported):

> Modern technology has triggered much litigation about the meaning of "package" under COGSA and ocean bills of lading. The statute, enacted in 1936, limits the carrier's liability to $500 per "package" but does not define "package". Admiralty judges, lawyers and bill of lading draftsmen have found employment in filling the gap, or trying to. Containers, undreamt of in the thirties, "added a new dimension to the problem," *Mitsui & Co., Ltd. v. American Export Lines*, 1981 AMC 331, 343, 636 F.2d 807, 816 (2nd Cir.1981), by creating "another area of contention" *Allied International*

*American Eagle Trading Corp. v. S.S. Yang Ming*, 1982 AMC 820, 824, 672 F.2d 1055, 1058 (2nd Cir.1982). Comprehensive reviews of the authorities are found in *Yang Ming*, supra, and *Solar Turbines, Inc. v. M.V. Alva Maersk*, 1984 AMC 2007, 584 F.Supp. 32 (S.D.N.Y.1983).

But as Judge Haight further noted, one question, not raised by the facts of the case before him, remained unanswered. Thus, he wrote (1985 AMC 1364, 1365):

> I am also entitled to consider Clause 10 of the bill of lading, quoted supra. In that provision of the contract, the parties undertake to provide when the container will be regarded as the COGSA "package." The first sentence of the clause provides, in substance, that when the container is stuffed by or on behalf of the shipper, the carrier's liability is limited to $500 with respect to the contents of the container: in other words, for limitation of liability purposes the container is the package. The clause secures to the shipper the option to declare a higher value on the face of the bill of lading, and to pay additional freight in consequence. Plaintiff does not suggest that this particular provision offends COGSA; nor do I see upon what basis such an argument could be made. Of course, I confine this part of the decision to the facts presently before me. *The effect, if any, upon Clause 10 of a specific description on the face of the bill of lading of how many separate packages or units were stuffed in the container may wait for another day.* (Emphasis added).

With this case, that other "day" has arrived.

### The Bill of Lading

Defendant ocean carriers have moved for partial summary judgment declaring their liability under the bill of lading described below to be $500.

The face of the bill of lading is appended hereto as Appendix A and the reverse is appended as Appendix B.

Clause 11 of the Bill of Lading printed on the back of the bill (Appendix B) in miniscule type face reads:

Clause 11: Package Limitation. Neither the carrier or the vessel shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding U.S. § 500 per package, or in the case of goods not shipped in packages, per customary freight unit, unless the nature and value of such goods have been declared by the Shipper before shipment and inserted in this Bill of Lading (Box 26) and the Shipper has paid the additional charges on such declared value (Box 23). Where container(s) is stuffed by shipper or on his behalf, and the container is sealed, the Carrier's liability will be limited to U.S. § 500 with respect to the contents of each container, except when the Shipper declares value on the face hereof (Box 23). The freight charged on sealed containers when no higher valuation is declared by the shipper is based on the value of U.S. § 500 per container. This clause shall also apply to the Carrier's servants and contractors (see Clause 6).

The container was packed by the shipper and padlocked for a house to house shipment. It is not disputed that the bill of lading was prepared by the defendants' agent. Plaintiff alleges that the 76 bales sustained water damage. The freight paid of $1,885 was based on a "lumpsum."

At oral argument, counsel for the shipper alleged that the freight damages would have been the same, *i.e.*, the negotiated lumpsum amount, regardless of whether the bill of lading had indicated that there were 76 packages (bales) contained in a single container or one package (*i.e.*, the container) containing 76 bales. However, an affidavit in support of the motion furnished by the shipping manager for Liner Agencies Ltd., which prepared the bill of lading, asserts that the carrier "would have charged a greater freight rate had the shipper declared its intentions to treat each of the bales in the container as a package, ..." Affidavit of Joseph Osseiyaw, ¶ 13.

Plaintiff-shipper invokes the conclusive presumption that "the container is *not* the package where the bill of lading discloses the container's contents" unless clear and unambiguous language indicates agreement on the definition of "package." *Smythgreyhound v. M.V. Eurygenes*, 666 F.2d 746, 753 n. 20 (2d Cir.1981).

Further, plaintiff-shipper asserts that the bill of lading is a contract of adhesion printed by the carrier and completed by its agent and that the language of clause 11 should not overcome the fact that specific units within the container are identified in the bill of lading. In essence plaintiff-shipper argues that the container, which is the "functional equivalent of the hull of the ship", is found to be the package only as a matter of last resort when no other unit is identified. See *Solar Turbines, Inc. v. M.V. Alva Maersk*, 584 F.Supp. 32, 34 (S.D. N.Y.1983). Utilizing identified units within the container as the "package," plaintiff-shipper contends is not only faithful to the "intent of the parties" but is consistent with the policy of COGSA to restrict a carrier's ability to limit its liability unduly. See *Leather's Best Inc. v. S.S. Mormaclynx*, 451 F.2d 800, 815 (2d Cir.1971).

Defendant-carrier, of course, relies on the explicit language of clause 11 and the law of contracts and urges that the carrier is entitled to gauge its liability in reliance on the terms of the bill. Defendant-carrier notes that both in the numeral "1" appearing under the caption "No PKGS", and the word "one" appearing after the printed words "Total number of packages or units in words (total column 19)", is an intent manifested to treat the shipment as a single package. Defendant-carrier further stresses the ability of the shipper to obtain greater protection by declaring separate packages as the shipment and paying a higher freight. Defendant-carrier urges that where, as here, there is a house to house delivery of a padlocked container stuffed by the shipper and where a lumpsum freight is charged, the carrier's liability should not depend on the number of units within the container, a matter of no concern to the carrier.

*Discussion*

■ We conclude that where the bill of lading prepared by the carrier's agent discloses a specific number of identifiable units as the contents of the container, those units constitute the package, despite the disclaimer contained in printed clauses, such as clause 11 of this bill of lading. Our conclusion that this result is more likely to accord with the intent of the parties (had the parties given the matter any thought) is based on a number of factors. First, we agree with plaintiff-shipper that there is a presumption that the container is not the package unless no other unit is feasible or there is a clear manifestation of an intent that this was intended. We do not find the language of clause 11 appearing on the form's reverse side to be such a clear manifestation of intent. Although defendant says it had no interest in the contents of the container which it received padlocked, defendant's agent had sufficient information to describe the contents as "76 bales of grey cloth".

■ We do not believe resolution of the question whether a different form of package description would have altered the freight charged in this particular case is critical to the decision of this motion. (If it were, we would resolve the question in defendant-carrier's favor since plaintiff-shipper has supported its contention solely by oral statement of counsel.) However, we conclude that where the unit contents of a container appears on the face of the bill of lading, they are presumptively the packages for COGSA liability limitation purposes and that the carrier has the burden of overcoming that presumption by showing a clear, contrary intent. The appearance of clause 11 on the reverse of the bill prepared by the carrier's agent does not overcome this presumption.

Where language is inserted in a printed form, the inserted language is thought to furnish a clearer guidance as to the parties' intent than the printed, stereotyped language. We recognize that this argument cuts both ways since both the numeral "1" and the word "one" appear as the inserted entries for the number of packages. But given the existing state of the law concerning the significance of a statement on the face of a bill of lading as to the units shipped in a single container (*Smythgreyhound, supra*), we hold that this disclosure controls despite the language of clause 11.

The result reached we believe is more likely to be what the parties would have intended, intent in this instance being in the nature of a legal fiction for what result better accommodates both the needs of the industry and sound policy.

The motion for partial summary judgment limiting liability to $500 is denied.

SO ORDERED.

## APPENDIX A

| | |
|---|---|
| JUAPONG TEXTILES LIMITED<br>P O. BOX 4243<br>A C R A | EXPORT REFERENCES (6) |
| CONSIGNEE (3)(COMPLETE NAME ADDRESS AND PHONE NUMBER)<br>(NOT NEGOTIABLE UNLESS CONSIGNED TO ORDER)<br>TO ORDER OF CHASE MANHATTAN BANK<br>N.A. 1 CHASE MANHATTAN PLAZA<br>NEW YORK, N.Y. 10081,<br>USA | FORWARDING AGENT — FMC NUMBER (7)<br><br>POINT AND COUNTRY OF ORIGIN (8) |
| NOTIFY (4)(COMPLETE NAME ADDRESS AND PHONE NUMBER)<br>MONICA TEXTILES CORPORATION<br>45 WEST , 36TH STREET , NEW YORK<br>N.Y. 10081, FREDRIK RICHARDS 321,<br>EBAY ST. USA. | ALSO NOTIFY — ROUTING INSTRUCTIONS (9) |

| PRE-CARRIAGE BY (12) | PLACE OF ACCEPTANCE (13) | | |
|---|---|---|---|
| VESSEL (*4)<br>"TANA " | PORT OF LOADING (15)<br>TEMA, GHANA | ACCEPTANCE TERMINAL/LOADING PIER (10) | TYPE OF MOVE (11) |
| PORT OF DISCHARGE (16)<br>BAVANA | PLACE OF DELIVERY (17) | ON-CARRIAGE BY (17A) | |

| CARRIER's RECEIPT | | PARTICULARS FURNISHED BY SHIPPER — CARRIER MAKES NO REPRESENTATION | | |
|---|---|---|---|---|
| MARKS AND NUMBERS (*8) | NO PKGS (19) | HM / DESCRIPTION OF GOODS (20) | GROSS WGT (21) | MEAS'MT (22) |
| CONTAINER NO:<br>CTIU: 315376-5 | 1 x | 20' CONTAINER STC: 76 BALES MTC 993<br>RN 33519 GREY CLOTH SIOT 96IN<br>100% COTTON (80,000 YARDS)<br><br>SHIPPED ON BOARD<br><br>FREIGHT/CONTAINER HIRE CHARGES<br>PAYABLE AT DESTINATION | 11,530Kilos | 26.760X |

TOTAL NUMBER OF PACKAGES OR UNITS IN WORDS (TOTAL COLUMN 19)   **ONE**

* If the Boxes 12, 13, 17 or 17A are filled out, shipment will be treated as Through Combined Transport. Carrier undertakes entire transport from the place where the goods are accepted to the place designated for their delivery and assumes full liability for such transport as per Clause 8.

| ITEM NO | FREIGHT CHARGES (23)(SEE CLAUSE 11 AND 25) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | CHARGES | CODE | REVENUE TONS | RATE | CURR. | P* | PREPAID | COLLECT |
| | | | | | | | | |

| DECLARED VALUE CHARGE (See Clause 11 & Tariff) | DV | | | |
|---|---|---|---|---|

If this Bill of Lading is to order (Box 3), then Three (3) Bills of Lading all of like tenor, have been issued, ONE of which being accomplished, the others shall stand void

MONTH   DAY   YEAR   2 8 DEC 1937
FOR AND ON BEHALF OF THE MASTER
For LINER AGENCIES (GHANA) LTD.

As Agents for the Master
AS AGENTS

| EXCHANGE RATE | | TOTAL | |
|---|---|---|---|
| TOTAL PREPAID IN LOCAL CURR. | | PREPAID AT (24) | PAYABLE AT (24A) |
| NUMBER OF ORIGINAL B(S)L ISSUED (25)   **(3) THREE** | DECLARED VALUE BY SHIPPER (26)<br>(SEE CLAUSE 11 AND TARIFF) |
| | (CONTINUED ON REVERSE SIDE) |

Exhibit 2